there can't be a causal connection between being induced somehow to pay out more money by something that happened after that occurs if there's no further questions thank you thank you a few quick things first on the accrual time I would point out that the district court's order is absurd because at the time that the plaintiff paid the money yet $8,000 for the features he didn't know whether the statements of the car would one day become self-driving or false or not it's a to say that the injury occurred on that date doesn't make sense because there was no misleading statement at that time or at least you didn't know what the statement you don't know that whether it's misleading until some future time second on the discovery rule the discovery rule presumes that all elements of the claim have been met and then the question is whether the plaintiff discovered the problem or should have discovered the problem but in our case that that's what we're saying we're saying that all of the elements are not met at least not at the time of purchase the question we're asking is when do all the elements become met so we're not presuming initially that they're all met and then asking when should the plaintiff have discovered it the complaint alleges that he purchased the car on 12 December 31st 2016 he paid 8,000 for the FSDC package there's a representation in January of 2016 and up to that point where this self-driving car would be available within two years at maximum why didn't he bring his claim in 2018 when that if the claim is that the promise to purchase this was based on misrepresentations that it would be available before he paid the money why bring the case in 2018 why wait six years see that's the right so everything we're struggling with right so at the time the plaintiff purchased the car Tesla repeated promises about making the car self-driving but that Tesla did not provide any particular date it said that it's going to you know it's going to have January 2016 statement was two years and then there was a subsequent within a year right but he purchased the car on December 31st 2016 on December 31st 2016 Tesla made statements such as the statement about the smart summon it he would be able to summon the car from anywhere and he would be able to get in the car and it would drive from anywhere those statements were not dated so I think a fact question arises as to whether you know a reasonable consumer would just look at the January statement or instead of they would look at the statement that was actually made at the time of purchase that he relied on when he purchased a car well but the January statement put a two-year mark did have a two-year mark right well but the more recent statement that happened on the day of purchase conflicts that statement or at least it doesn't confirm it because it doesn't include a date I think I might have exceeded the time I had some other points but given that I'm out of time oh well thank you thank you counsel thank you both we'll take the case under advisement the next argument will be in case number 24 775 Joseph versus United States I think every court should have one of these podiums just saying good morning and may it please the court I'm Denise Rubin my firm is Rubin law PLLC and I appear as appellate counsel to the office of Alan Ripka and associates as the court is no doubt aware this is a relatively straightforward summary judgment motion and the record shows that there are material questions of fact that remain unanswered that needed to be resolved if only by a traverse hearing where we could have adduced the evidence to clearly flesh out whether proper service was made and whether in fact this process server was pushed off to the side in in the sense that he was not allowed to proceed upstairs to the attorney US Attorney's Office because of the cope at epidemic he was stopped in the lobby and a special security officer that was in the US Attorney's Office right so going upstairs wasn't going to get him to the Postal Service where he needed to be understood judge but he didn't know that yet he didn't know that at all it's relevant because the security officer took his paper said she was authorized to take his paper stamp the papers and gave him back a copy of the papers and gave them back to him he had no reason standing there with the stamped papers in his hand to think he'd gone to the wrong place I write that we don't have copies of those papers and signed papers in the record no we don't yes yeah because we have the opposing affidavits what's concerned me is that you didn't have a chance to file sir reply to maybe responded to the affidavits that were submitted by the government but I see no basis I've seen I've seen nothing that suggested that you had anything that would have actually created a an issue of fact as to whether proper service was actually made so can you tell me what you might adduce if we were to remand this well one they they continue to argue that they had no such employee as a person named s pilna the affidavit of service says she refused to give her full name he writes s pilna which was probably on a badge somewhere and her name is pilna check we know from mr. Slater's declaration as her supervisor that there is a Dolores pilna check working as a special security officer at that time and at that place and that again in the US Attorney's Office though not at the post office so what do you have to suggest that service was actually made on the Postal Service well the question I think is whether he was dissuaded from going further had she said to him oh no these are for the post office that's not us he would have gone next door but he she took the papers she looked at him she stamped them and she handed the stamp copy back he had no reason to think that he was in the wrong place and it's not disputed that the papers were delivery efforts but well on the other side there's no issue it seems to me respectfully judge I respectfully judge we disagree because there is an affidavit a declaration from a ms. Herbst in st. Louis who says we have these papers they're stamped with the date the 17th we don't know what the process is are they stamped the minute they're they're arriving or do they sit in a pile for a day or two till the envelope is open and then stamped a traverse hearing again would have adduced this information so we would have had an opportunity to say oh no look they got it that day by mail but but counsel part of the problem is that the affidavit also says there are separate entrances that the post office has its own entrance the US Attorney's Office has its own entrance and it would not be atypical for somebody the front line of an office to accept papers they don't sit there they're not lawyers they don't sit there and read them and say hey are we the proper office to receive it the burden and the onus is on the person serving to get the right place so if you go to the wrong house and they accept the papers somebody at the front door accepts them does that mean that you've perfected service when there's a completely separate entrance so the process server should have gone to the right house and they were separate entrances so I don't know how that really helps you it was s bill now rest bill in check well as it's Dolores actually Dolores pill in check then puts in an affidavit where she doesn't address any of this she she does not tell us oh we keep records so I can I can see that I didn't take papers from him on that day or my custom and practice would have been to say oh no you're in the wrong place if it said post office on it or we a deposition of whoever would have been met at the front of the office of the US Attorney had he been allowed to proceed upstairs would have said either no we would have taken them without reading we wouldn't have told them otherwise or perhaps had he come to us with these papers we would have said no no no you need to go down downstairs and next door the problem is we don't know and the record doesn't know because they were denied the traverse hearing that they sought so ultimately you'd want to end up with a kind of service by a stop all notion that if you could show that he was misled either on purpose or through some sloppiness that the government should treat services having been made in the service received by the Postal Service not exactly judge close but more to the point that the government government and the people working at the security desk for the government should not be misleading a process server should not be taking those papers stamping them and saying I'm authorized to take papers but ultimately where you'd be going you still wouldn't have service being timely made on the agency is required by statute so you'd have to be arguing that we should understand it to have been right had he not been misled had he not been allowed to leave those papers he would have gone next door and serve the post office physically but when a security guard says I can't let you go upstairs I can take those papers for you and stamp something gives them back to him and I recognized the stamp copies are not here on the record but there's also no evidence and not even an allegation that that didn't happen from the other side so we have to assume taking the evidence in the light most favorable to the opponent of a summary judgment motion as the court was bound to do that there was no such evidence in any case the Travers hearing would not have been an undue burden it would not have taken years of litigation to resolve and at that point we would have clear answers because the case law here says that when you're opposing good service you have an obligation to say exactly what happened what my process is this is what I recall miss Pillman checks affidavit her declaration is silent she says this is what I this is what I do in general but she doesn't say I have a recollection of this person I keep a log of all papers left with us she simply does not meet the burden that the case law sets for them thank you thank you your honors and may I please the court filled Paul assistant u.s. attorney representing the government in this case I think it's important to start by reorienting where we are the case law is clear and this court made it essentially emphatically clear and cook that actual receipt by the agency is what is required I know there's a lot of been a lot of discussion this morning about service when we're operating under the FTCA actual receipt by the appropriate agency is what is required and respectfully plaintiffs did not meet their burden to show that below they did not show that they properly served a location or a Postal Service employee my friend on the other side stated that the process server below had no reason to believe they were not in the right place respectfully there was every reason to believe that the process server was it was in the wrong place on the front of the door of the US Attorney's Office it says in big bold letters US Attorney's Office and underneath that it says the with an arrow pointing to the right to the next door when he walked in there's no indicia of it being a post office no mail slots no mailboxes no teller windows nothing so I think it I think really the question is whether it was reasonable for that individual believe to believe it was not put in a post office at the time and whether it was reasonable for him to believe that he was effectuating service on the post office and there was really no reason for him to believe that and and your honors we're talking about a licensed process server with instructions from counsel to serve the Postal Service if he walks into a door that says this is not the post office with no indicia that it is a post office then he's not serving the post office with respect to the allegation that there should have been a traverse hearing below again I think the point of a traverse hearing is to determine whether service was properly affected and when we're operating under the FTCA it's a different standard it's whether the appropriate agency actually received the administrative claims and I think the record makes clear that they did not serve a Postal Service location again no indicia that's a Postal Service no mailboxes no no sign that says it is a post office in fact there's a sign that says it's not a post office and then there's no reason to believe that the person they were serving was a Postal Service employee we there's evidence in the record that says mr. Pelnicek was not a Postal Service employee had never worked for the post office I never it was never authorized to accept so why isn't there a genuine issue of material fact at least about how that unfolded you know if this security officer did tell this process server that she was on behalf of the Postal Service would that create a relevant genuine issue of material fact I don't believe so your honor because I think the question really is whether it was reasonable for their license process server to believe that they were serving a post office so they're in a place that has no indicia of it being a post office and then if if someone says to them that I can accept papers like is there is there indicia is there an objective the objective circumstances would allow that person to believe they were actually serving the post office so for example if I were to if I'm a process server and I walk into a Starbucks attempting to serve the Postal Service and there's nothing in there that says that I'm in a post office I'm rather in a Starbucks where it's serving coffee I don't think it would be reasonable for anyone to infer that I was serving the post office so I think there really is no genuine issue of material fact there I think the court below correctly held that they did not which is again their burden to show that they serve their Postal Service location and a Postal Service employee your opponent mentioned that there is documentation that the Postal Service received the notice and it's dated November 17th are you is I don't know if that's alluding to the standard form 95 or something else can you tell us your position on that yes those are the standard form SF 95s that were mailed to the post office so there were three attempts at service here your honor only one of them actually made it to the post office and that's the those are the SF 95s that are in the record at 851 and 855 those are the mailed claims that were stamped as received on November 17th because the November 16th which I think is interesting if you think you serve the right person on November 15th why would you attempt service on November 16th well following day on a post office what is believed to be a post office but allegedly the claim is that a document was left at 86 Chambers Street which actually houses the civil division of the US Attorney's Office and not a post office so it seems odd that there would be and if but perhaps this is a better question for your opponent is if you think service was perfected or done adequately on November 15th why try again on November 16th I agree your honor and I will say with respect to the two other methods of service those weren't raised on appeal so we're really those really have been waived but I will note that there's evidence in the record of regarding the service at 86 Chambers which is not undisputedly not a post office no one's arguing that it is and even in the process service affidavit for the service on 86 Chambers it says authorized to accept they didn't just they disputed below that it didn't dispute below that it wasn't a post office so there's clearly no one at 86 Chambers saying that they're authorized to accept your service for the postal service and your honors if you have no further questions we'll stand on our papers and respectfully request that the court or firm thank you counsel in answer to the question a few minutes ago the reason they would then serve on the 16th and mail the copies to st. Louis directly I think partly were because there was some question in in the sense that he wasn't allowed to proceed upstairs so we don't know that the people upstairs ever got it we don't and again I would say to the court we don't know what they would have said had he been allowed to go up there so let's assume there was a question the statute it has to be served by the 16th why not make sure you're at a post office on the next day like you would think that would be the moment that you'd want to ensure that service was done on the correct agency I think there's also in answer to your question I think there's also some confusion and I'm not sure whose confusion this was but the the declaration by ms. Herbst at a 48 says that she is the with the National Tort Center st. Louis General Law Office and mr. mr. Powell's affidavit states that I served upon the United States Postal Service care of the Chief Counsel towards General Law Service Center which he then calls the USPS I think perhaps the terminology was somehow not clear to him he he thought that he was going to the US Attorney's Office and was not clear and was not made clear to him that there's a difference between serving us here and going next door to the post office this is just again surmise on my but looking at the titles I mean the question that we have again is what would we have learned had we had the opportunity to depose SSO Pilnicek to depose whoever would have been on duty at the front desk of the US Attorney's Office on that day what is your custom and practice somebody comes to you with this addressed you know this title on the papers would you have just accepted them or would you have turned him away and said you're in the wrong place I at no point do I think it let me say I it is not I would say appropriate for the government to be taking a position that if we don't tell somebody they're in the wrong place while they're still standing there and have an opportunity to fix it not to say this is where you have to go but even just to say this is not the right place but that never happened and when somebody takes the papers and stamps them and says I'm authorized to take service at that point a reasonable person would say okay I served them properly they took the papers she's authorized thank you thank you